**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **S.R., J.M., and T.H.**

**No. 21-0024** (Kanawha County 20-JA-255, 20-JA-256, and 20-JA-318)

**MEMORANDUM DECISION**

Petitioner Mother A.H., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's December 14, 2020, order terminating her parental, custodial, and guardianship rights to S.R., J.M., and T.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer N. Taylor, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental, custodial, and guardianship rights without first giving her additional time to participate in an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner had been pulled over for a traffic violation and both she and her boyfriend were intoxicated. The DHHR alleged that two-year-old S.R. and three-year-old J.M. were also in the vehicle. Law enforcement discovered heroin in petitioner's vehicle during the traffic stop. The DHHR further alleged that petitioner was arrested in February of 2020 "with a similar criminal complaint." According to the DHHR, petitioner had an extensive history with Child Protective Services ("CPS") regarding her history of drug abuse, including methamphetamine, alcohol

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

abuse, and heroin. Finally, the DHHR alleged that seventeen-year-old T.H. was in a legal guardianship with his maternal grandparents, and petitioner had abandoned him.

Petitioner did not appear for the preliminary hearing, which was held in August of 2020, but she was represented by counsel. The DHHR presented testimony that was consistent with the allegations in the petition. The circuit court ratified the removal of the children from petitioner's care and their placement with the maternal grandparents.

In September of 2020, the circuit court held an adjudicatory hearing. Petitioner did not appear but was represented by counsel. The DHHR presented testimony of a CPS caseworker who testified that she had attempted to contact petitioner for months prior to the filing of the petition but could not locate petitioner until she had been arrested for driving under the influence in June of 2020. According to the caseworker, petitioner left the children with their maternal grandparents and did not contact them while traveling out of state for an extended period of time. The case worker further testified that petitioner admitted to abusing methamphetamine, heroin, alcohol, and marijuana. The case worker also testified that the DHHR attempted to offer petitioner services but had been unable to make further contact with her. The case worker explained that the last time she had contact with petitioner was two days before the preliminary hearing. Ultimately, the circuit court found that petitioner was an abusing parent due to her consistent substance abuse and her failure to support her children.

The circuit court held the final dispositional hearing in December of 2020. Petitioner did not appear but was represented by counsel. The circuit court heard testimony that petitioner had not participated in the services offered by the DHHR. A CPS case worker testified that petitioner did not maintain contact with the DHHR and that the last contact she had with the DHHR was in August of 2020. Furthermore, petitioner had not visited with the children since their removal from her care. Based on her noncompliance and her failure to remedy the conditions of abuse and neglect, the CPS worker recommended that the circuit court terminate petitioner's parental rights to the children. Ultimately, the circuit court found that petitioner was unable or unwilling to provide for the needs of the children and that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. The circuit court concluded that it was necessary for the children's welfare to terminate petitioner's parental, custodial, and guardianship rights. Accordingly, the circuit court terminated petitioner's parental, custodial, and guardianship rights by its December 14, 2020, order. Petitioner now appeals this order.[2]

The Court has previously held:

---

[2]The children's respective fathers retained their parental rights. T.H. and his father were dismissed from the proceedings when T.H. reached the age of majority in late December of 2020. The father of S.R. and J.M. is participating in an improvement period. According to the parties, the permanency plan for these children is reunification with their father with a concurrent permanency plan of adoption in their current placement.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without providing her additional time to participate in an improvement period. She argues that "[g]iven the nature of long-term drug abuse, it cannot be expected that [petitioner] could turn her life around in such a short amount of time," referencing the four-month duration of the proceedings. She asserts that the nature of her drug abuse "would lead to setbacks" and that, because the children were placed with family, she should have been granted additional time to participate in services. Petitioner's argument fails to persuade, and we find she is entitled to no relief on appeal.

West Virginia Code § 49-4-610(2), which governs post-adjudicatory improvement periods, requires the parent to file "a written motion requesting an improvement period" and "demonstrate[], by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." Further, it is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015); *see also In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely).

While petitioner argues that the circuit court failed to provide her additional time to participate in an improvement period, it appears from the record that she never requested such an improvement period. Moreover, her counsel made no argument below to delay termination of her parental, custodial, and guardianship rights to provide her additional time to comply with services. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Nevertheless, it is clear on appeal that petitioner could not have proven that she was likely to fully comply with an improvement period, even if she had filed such a request. Petitioner presented no evidence to support such a conclusion. Rather, the evidence presented provides that she failed to participate in any services, failed to maintain

contact with the DHHR, and failed to even visit with the children after they were removed from her custody. Accordingly, we find petitioner is entitled to no relief in this regard.

Furthermore, although petitioner does not directly challenge the termination of her parental, custodial, and guardianship rights, we nevertheless find that circuit court's order was not in error. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental, custodial, and guardianship rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) sets forth that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future when the parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Notably, West Virginia Code provides that such conditions exist when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

*Id.* § 49-4-604(d)(3).

Here, petitioner failed to follow through with the services offered by the DHHR to reduce or prevent the abuse and neglect of the children. She did not participate in any of the services offered by the DHHR and did not maintain contact with her case worker or service providers. Based on this evidence, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because she would not avail herself of these services. Petitioner does not challenge that finding on appeal, and, upon our review, we find no error in that finding.

In further support, we reiterate that petitioner failed to even avail herself of visitation with the children during the proceedings. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Notably, petitioner argues that the children "had a relationship with [petitioner]," but does not mention that she made no attempt to even *see* them once they were removed. S.R. and J.M are young children of tender years, and we have previously emphasized the importance of providing children permanency and stability early in life. To that end, we have held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and

4

physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Essentially, petitioner is arguing for an indeterminate amount of time so that she might begin to participate in the proceedings, or the services offered by the DHHR. We find such a request unconscionable in light of her total noncompliance during the proceedings and the ages of S.R. and J.M.

> Finally, we have held that
>
> > "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the record fully supports the requisite findings, we find no error in the circuit court's termination of petitioner's parental, custodial, and guardianship rights rather than the imposition of a less-restrictive dispositional alternative, such as the granting of an improvement period sua sponte.

> Lastly, because the proceedings regarding S.R. and J.M's father are ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> > At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the dispositional order. As this Court has stated,

> > [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 14, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton